**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAROL STATE, L.L.C., an Illinois Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:21-cv-04286 |
| v. | ) ) | Judge: |
| EVERLANE, INC. a Delaware Corporation, | ) ) | Magistrate Judge: |
| Defendant. | ) ) | |

**COMPLAINT FOR BREACH OF LEASE AND OTHER RELIEF**

Plaintiff Marol State, L.L.C. (hereafter, "Marol State" or "Landlord"), by and through its counsel, Thomas P. Yardley and Christine R. Walsh of Robbins, Salomon & Patt, Ltd., for its Complaint For Breach of Lease against Defendant, Everlane, Inc. (hereafter, "Everlane" or "Tenant"), hereby states and alleges as follows:

**ALLEGATIONS COMMON TO ALL COUNTS
NATURE OF ACTION**

1. Marol State, as Landlord, and Everlane, Inc., as Tenant, entered into a lease agreement entitled Lease Agreement (the "Lease") in October of 2019. A true and accurate copy of the Lease is attached hereto as **Exhibit 1** and may be the subject of a Motion to File a Copy of the Lease under Seal based upon Northern District of Illinois Local Rule 26.3 (such Lease shall be referred hereafter as Exhibit 1).

2. Marol State now files this Complaint for Breach of Lease and Other Relief against Everlane based upon Everlane's failure and refusal to pay rent in violation of the terms of the Lease.

**THE PARTIES**

3. Marol State is an Illinois limited liability company that has two members. Its members are citizens of the states of Illinois and Michigan.

4. Marol State owns a commercial multi-tenant building located at 4 E. Cedar Street, Chicago, Illinois 60610, with 6,921 rentable square feet (the "Building").

5. Everlane is a Delaware Corporation with its principal place of business in San Francisco, California.

6. Everlane is an online and brick and mortar retailer based in the United States of America that currently operates retail stores in New York City, Brooklyn, Boston, Austin, Seattle, Los Angeles and San Francisco. Everlane pledges to manufacture clothing with exceptional quality in ethical factories and provide their customers with radical transparency regarding the true cost of every product they sell. Everlane planned to open a new flagship store in downtown Chicago, Illinois in the Building owned by Marol State.

**JURISDICTION AND VENUE**

7. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs based upon the unpaid amounts due under the Lease.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Building that is the subject of the Lease is located in Chicago, Cook County, Illinois. As such, the property that is the subject of the action is situated in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## COUNT I- BREACH OF LEASE

1-8. As and for its claim for breach of Lease, Marol State, by and through its attorneys, incorporates herein paragraphs 1 through 8 and further alleges as follows:

9. Marol State and Everlane executed the Lease in October 2019. *See* Exhibit 1.

10. Everlane leased certain Premises in the Building from Marol State comprising 3,629 square feet of ground floor retail space and 614 square feet of a Common Corridor (Ex. 1 – Lease, Section 1.3).

11. Everlane leased and was to assume possession of Suite Tenant C and Suite Tenant D of the Building. (Ex. 1- Lease, Section 2.1).

12. The initial term of Lease was ten (10) years, commencing on the earlier of: [1] the date tenant opens for business; or [2] September 1, 2020 (the "Commencement Date"). (Ex. 1- Lease, Section 1.4, 3.1 and 3.2).

13. Everlane did not open for business, resulting in the Commencement Date being September 1, 2020.

14. The Lease was scheduled to expire on "the last day of the tenth (10th) full Lease Year, unless the Lease was: (i) extended pursuant to Section 3.5, in which case the Expiration Date shall be the last day of the applicable Option Term; or (ii) terminated by Tenant pursuant to Section 3.6, in which case the Expiration Date shall be the Early Termination Date (Section 3.6)." (Ex. 1- Lease, Section 1.7).

15. The last day of the tenth (10th) full Lease Year after the September 1, 2020 Commencement Date is August 31, 2030.

16. Upon entry into the Lease with Everlane, Marol State was obligated to pay, and did in fact pay, a leasing commission to licensed real estate brokers in the amount of $581,962.82 to procure the Lease.

17. Section 3.6 of the Lease provided that so long as Everlane is not in default under the Lease, Everlane has a one-time option to terminate the Lease at fifty-five (55) months after the Commencement Date upon payment of a stipulated Termination Fee. (Ex. 1- Lease, Section 3.6).

18. The Base Rent payable under the Lease for years 1-5 was $78,617.08 per month (comprised of $41,027.08 per month for Suite Tenant C and $37,590.00 per month for Suite Tenant D), and for years 6-10 was $86,478.79 per month (comprised of $45,129.79 per month for Suite Tenant C and $41,349 per month for Suite Tenant D). (Ex. 1- Lease, Section 1.10).

19. The Lease further provided for Everlane to pay as additional rent Everlane's proportionate share of Taxes and Tenant's proportionate share of Expenses incurred in respect to the Building, (Ex. 1-Lease, Section 4.4 and Section 4.5).

20. Everlane's agreed proportionate share of Taxes is 52.43% and Tenant's agreed proportionate share of Expenses is 52.43%. (Ex.1 – Lease, Section 1.16).

21. Solely for the First Lease Year, Everlane's proportionate share of Taxes was capped at $93,346.00 and Everlane's proportionate share of Expenses was capped at $21,215.00 (Ex. 1- Lease, Section 4.5.A.(4)).

22. The Lease provides that in the event of litigation to enforce the covenants or conditions of the Lease, the prevailing party shall recover from the non-prevailing party all reasonable costs and expenses incident to the action or proceeding, including reasonable attorneys' fees. (Ex. 1- Lease, Section 12.3).

23. As provided in pertinent part in Section 12.1 of the Lease: "(a) in the event of any failure to pay Base Rent, Additional Rent, or any other Rent for more than ten (10) days after it is past due, provided however that with respect to one such failure in any twelve (12) month period, no default shall be deemed to have occurred unless such failure continues to a period of five (5) days after Landlord delivers written notice thereof to Tenant, . . . then Tenant shall be deemed to be in default of this Lease and Landlord, in addition to any other rights or remedies it may have, shall have the immediate right to terminate (and mention in this Lease of any particular remedy shall not preclude Landlord from any other remedy at law, in equity or by statute) shall have the rights and remedies set forth in Section 12.2." (Ex. 1 – Lease, Section 12.1).

24. Section 12.2 of the Lease provided that, should Tenant be in default as provided in Section 12.1 beyond any applicable notice and cure periods, Landlord may either terminate the Lease or may, from time to time without terminating the Lease, take possession of the Premises and relet the Premises or any part thereof at such rental and upon such other terms as the Landlord in its sole discretion may deem advisable. If Landlord does not terminate the Lease, Landlord is entitled to recover from Tenant the Rent payable under the Terms of the Lease. (Ex. 1- Lease, Section 12.2).

25. The Lease further expressly provides that "notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such previous breach". (Ex. 1- Lease, Section 12.2 A.)

26. By letter dated September 14, 2020, Marol State sent Everlane, via commercial overnight carrier, a First Payment Invoice specifying the Base Rent, Everlane's proportionate share of Expenses and Everlane's proportionate share of Taxes, for a total amount due of $88,163.83. A true and accurate copy of First Payment Invoice is attached hereto as **Exhibit 2**.

5

27. Everlane received a copy of the First Payment Invoice on September 15, 2020.

28. Everlane was obligated to pay the first payment as specified in the First Payment Invoice, no later than ten (10) business days after Everlane's receipt of the First Payment Invoice. As such, Everlane was obligated to pay the First Payment Invoice no later than September 29, 2020. (Ex.1 – Lease, Section 4.1).

29. Section 12.1 of the Lease provides that if Everlane does not pay the amount reflected in the First Payment Invoice for more than ten (10) days after it is past due, Everlane shall be in default under the Lease if such amount is not paid within five (5) days after Marol State delivers written notice thereof. (Ex. 1- Lease, Section 12.1).

30. As of October 10, 2020, Base Rent and addition rent comprised of Everlane's proportionate share of Taxes and Expenses for September 2020, as reflected in the First Payment Invoice, was more than ten (10) days past due.

31. Everlane failed to pay the First Payment Invoice by October 10, 2021 or at any time thereafter.

32. In addition to rent payable for September 2020, Base Rent and Everlane's proportionate share of Taxes and Expenses payable for October 2020 became due and payable as of October 1, 2020. Accordingly, as of October 1, 2020, rent for October 2020 in the amount of $88, 163.83 additionally became due and payable. (Ex.1 – Lease, Section 4.1).

33. As of October 12, 2020, rent due from Everlane for the month of October 2020 was more than ten (10) days past due, rendering Tenant in default under the Lease if Tenant failed to pay October Rent within five (5) days after Landlord delivered written notice thereof to Tenant. (Ex. 1 – Lease, Section 12.1).

34. By letter dated October 12, 2020, sent on behalf of Marol State by its attorneys via UPS Overnight ("Notice of Monetary Default"), Everlane received notice on or about October 13, 2020 that September rent reflected in the First Payment Invoice was more than ten (10) days past due and that rent due and payable for October 2020 was more than ten (10) days past due. A true and accurate copy of the Notice of Monetary Default sent on behalf of Marol State to Everlane is attached hereto as **Exhibit 3**.

35. As referred to in the Notice of Monetary Default, Section 12.1 of the Lease provided that Everlane had a period of five (5) days to cure a payment default after Landlord delivered written notice of non-payment of rent that is more than ten (10) days past due.

36. By the Notice of Monetary Default, Everlane was notified that if Marol State did not receive from Tenant past due rent aggregating $176,327.66 on or before the fifth (5th) day after the Notice of Monetary Default was delivered to Everlane, Everlane's rights to possession of the Premises would thereupon terminate as provided under Sections 12.1 and 12.2 of the Lease, without termination of the Lease, and without further notice, with the Landlord reserving all rights to thereafter terminate the Lease at a future date based upon the same default. (Ex. 3 – Notice of Monetary Default, page 3).

37. Everlane failed to pay the rent past due for September 2020, as reflected by the First Payment Invoice, and failed to pay the rent past due for October 2020, within five (5) days after receiving the Notice of Monetary Default, or at any time thereafter.

38. Rent to be paid by Tenant which is not paid on or before the expiration of the notice and cure period provided in Section 12.1 of the Lease shall bear interest at the Default Rate from such due date until paid. (Ex. 1 – Lease, Section 4.2).

7

39. The term Default Rate is defined in Section 26.16 of the Lease to mean three percent (3%) per annum in excess of the "Prime Rate" published in the Wall Street Journal. (Ex. 1 – Lease, Section 26.16). As of the date of the Notice of Monetary Default the applicable Prime Rate was 3.25%, resulting in an applicable Default Rate of 6.25% per annum.

40. In addition to interest at the Default Rate, if Tenant fails to pay any Rent on or before the expiration of the notice and cure period provided in Section 12.1 of the Lease, Tenant shall be obligated to pay a late payment charge equal to five percent (5%) of the amount due to reimburse Landlord for additional administrative costs. (Ex. 1 – Lease, Section 4.2).

41. By letter dated November 25, 2020 (the "Surrender Letter"), Everlane, by its Chief Financial Officer, Edgar Ho, confirmed to Marol State that Everlane was surrendering possession of the Premises to Marol State and that:

> "Everlane irrevocably disclaims any and all right to possession of the Premises, and further irrevocably disclaims any and all right in any personal property, tools, materials, fixtures, or equipment that may remain in the Premises as of (November 25, 2020)."

A true and accurate copy of the Surrender Letter is attached hereto as **Exhibit 4**.

42. At the time Everlane sent the Surrender Letter, Everlane was in default under the terms of the Lease.

43. Everlane has not paid to Landlord any payments of Base Rent, Additional Rent, Late Charges, Default Interest, or other payments whatsoever as provided under the Lease.

44. By letter dated May 10, 2021 sent on behalf of Marol State by its attorneys via UPS Overnight ("Notice of Termination of the Lease") Marol State notified Everlane that it was terminating the Lease effective immediately upon the Notice of Termination of Lease being deemed given, as provided in Section 26.9 of the Lease. A true and accurate copy of the Notice of Termination of Lease dated May 10, 2021 is attached hereto as **Exhibit 5**.

45. Included in the Notice of Termination of Lease was a reservation of rights on behalf of Marol State reserving its "rights and remedies arising under the Lease as provided for in Section 12.2.A and Section 12.2.B of the Lease, and as otherwise provided in the Lease or as otherwise provided at law, in equity, or by statute, which may in any way arise by reason of or as a result of Everlane's Default under the Lease." *Id*. at p. 2.

46. Following Everlane's breach of the Lease, Marol State expended reasonable efforts to mitigate damages and comply with Illinois law with respect thereto as provided in Section 12.2 B of the Lease (a) by listing the Premises as available for reletting with a national retail leasing broker, and thereafter, upon failing to find a replacement tenant, (b) by terminating the Lease in May 2021 and applying the rent differential provided in the second full paragraph of Section 12.2 A. of the Lease.

47. By reason of the breach of Lease by Everlane, as referred to in paragraphs 9 through 46 of Count I of this Complaint, Everlane is liable to Marol State for the following amounts:

    A. For the period from September 1, 2020 through May 10, 2021, an amount not less than $770,438.12 comprised of the following:

        (i) Base Rent, Taxes and Expenses each month from September 1, 2020 through April 30, 2021 at the rate of $88,163.83 per month, for an aggregate amount of $705,310.64;

        (ii) Late charges at the rate of 5% of the amount due each month, in a monthly amount of $4,408.19, for an aggregate Late Charge for September 1, 2020 through April 30, 2021 in the amount of $35,265.53;

        (iii) Base Rent, Taxes and Expenses for the period from May 1, 2021, through May 10, 2021, in the amount of $28,439.95.

        (iv) A Late Charge for non-payment of amounts due for the period from May 1, 2021 through May 10, 2021 at the rate of 5% of the amount due for such period, totaling $1,422.00.

    B. As of the date of termination of the Lease (May 11, 2021) pursuant to the Notice of Termination of Lease:

9

      (i)     All damages Marol State may incur by reason of Everlane's breach of the Lease, including, without limitation, leasing commissions, reasonable attorneys' fees: and

      (ii)    the worth at the time of such termination of the excess, in any, of the amount of Rent reserved in the Lease for the remainder of the Lease Term over the then reasonable rental value of the Premises for the remainder of the Lease Term, all of which amounts became immediately due and payable as of the date of termination of the Lease. (Ex. 1 – Lease, Section 12.2).

C.    Interest at the Default Rate for amounts from time to time due and owning from Everlane to Marol State.

D.    Damages incurred by Marol State for the lost value of the leasing commission in the amount of $581,962.82 paid by Marol State to licensed real estate brokers to procure the Lease, which lost value was suffered by Marol State as a consequence of Everlane's breach of the Lease.

E.    Reasonable costs and expenses of enforcement, including reasonable attorneys' fees, court costs, investigation expenses and discovery costs.

F.    Such other amount provided under the Lease as may be proven by competent evidence.

WHEREFORE, Plaintiff Marol State, LLC respectfully requests that this Court enter a judgment in favor of Plaintiff, Marol State, L.L.C. and against Defendant Everlane, Inc., making findings and entering judgement in amounts as follows:

a)    Defendant Everlane, Inc. defaulted on the Lease by failing to pay Rent or make any other payments from and after September 1, 2020, as provided for in the Lease;

b)    Defendant Everlane's right to possession was properly terminated as provided in the Notice of Monetary Default.

c)    Marol State, L.L.C. has been damaged and Defendant Everlane, Inc. is liable to Marol State, L.L.C. for non-payment of Base Rent, Taxes, Expenses and Late Charges for the period from September 1, 2020 through May 10, 2021 in the aggregate amount of not less than $770,438.12.

d)    The Lease was properly terminated as of May 11, 2021.

e)    Marol State, L.L.C. has been damaged and Defendant Everlane, Inc. is liable to Marol State, L.L.C. for additional amounts accruing as of the date of termination

      of the Lease for the following amounts, as may be established by competent evidence at trial or otherwise:

        (i) All damages Marol State, L.L.C. may incur by reason of Defendant Everlane Inc's breach of the Lease, including, without limitation, leasing commissions, reasonable attorneys' fees; and

        (ii) the worth at the time of such termination of the excess, in any, of the amount of Rent reserved in the Lease for the remainder of the Lease Term over the then reasonable rental value of the Premises for the remainder of the Lease Term, all of which amounts became immediately due and payable as of the date of termination of the Lease.

  f) Defendant Everlane, Inc. is liable to Plaintiff Marol State, L.L.C. for any and all attorneys' fees and costs and other expense of litigation as provided for in the Lease.

  g) Defendant Everlane, Inc. is liable to Plaintiff Marol State, L.L.C. for damages in the amount of the loss of value of the leasing commission paid by Marol State, L.L.C. to enter into the Lease incurred by reason of Everlane, Inc's breach of the Lease without paying any Rent whatsoever.

  h) Defendant Everlane, Inc. is liable to Plaintiff Marol State, L.L.C. for interest at the Default Rate of 6.25% on all amounts due from Everlane, Inc. to Marol State, L.L.C. from the date such amount became due and payable until entry of judgement.

  i) Any other relief in favor of Marol State, L.L.C. and against Everlane, Inc. as deemed appropriate by this Court.

### COUNT II – DECLARATORY JUDGMENT

1-8. Marol State repeats and re-alleges paragraphs 1-8 of the Allegations Common to All Counts as paragraphs 1-8 of this Count II.

9-47. Marol State repeats and re-alleges paragraphs 9-47 of Count I as paragraphs 9-47 of this Count II.

48. From and after being served with the Notice of Monetary Default, Everlane, Inc has asserted that by reason of Section 3.6 of the Lease the actual duration of the Lease term is 55 months rather than the TEN (10) YEAR (120 months) term stated in section 1.4 of the Lease.

49. Section 3.6 of the Lease, at subparagraph A, provides as follows:

> "Subject to the terms of this section 3.6, Tenant shall have and is hereby granted a one-time right and option ("Termination Option") to terminate the Lease effective at fifty-five (55) months after the Commencement Date (the "Early Termination Date"), which termination option shall be exercised by Tenant, if at all, by delivering written notice to the Landlord of Tenant's exercise of such Termination Option ("Tenant's Termination Notice"), concurrently with the payment of an early termination fee to Landlord in the amount of Three Hundred Thirty-Five Dollars ($325,000.00) ("Termination Fee"), on or before, but not later than, one hundred fifty (150) days prior to the Early Termination Date."

50. Section 3.6 of the Lease, at the second sentence of subparagraph B, provides in pertinent part as follows:

> "It shall be a condition of Tenant's right to exercise the Termination Option that Tenant is not in default beyond any applicable notice and cure period under any of the terms, covenants, or conditions of the Lease at the time that Tenant delivers Tenant's Termination Notice or upon the Early Termination Date."

51. As Everlane has at all times relevant hereto been in default of the payment terms, covenants and conditions of the Lease, Marol State maintains Everlane has no right to exercise the Termination Option in Section 3.6 of the Lease to shorten the duration of the Lease to fifty-five (55) months after the Commencement Date.

52. Further, at no time while the Lease remained in effect or at any time thereafter, through the date of filing this Complaint, has Everlane ever delivered to Marol State a Tenant's Termination Notice nor pay or tender to Marol State the Termination Fee which is required to be paid at the time of serving a Tenant's Termination Notice pursuant to Section 3.6 of the Lease.

53. An actual controversy exists between Marol State and Everlane regarding whether Everlane has or had a right to exercise the Termination Option set forth in Section 3.6 of the Lease under the facts set forth in this Complaint, the determination of which controversy has a direct impact on the parties and the determination of the scope of damages available under the Lease. As

such, Marol State seeks a declaration from this Court as provided for in Rule 57 of the Federal Rules of Civil Procedure and/or 28 U.S.C. 2201, that Everlane has no right to exercise the Termination Option provided under Section 3.6 of the Lease.

WHEREFORE, Plaintiff Marol State, L.L.C. respectfully requests that this Court enter a declaratory judgment finding as follows:

a) Defendant Everlane, Inc. defaulted on the subject Lease by failing to make any monetary payments for rent and other amounts due under the Lease;

b) Defendant Everlane, Inc. has to no right to terminate the Lease pursuant to Section 3.6 of the Lease;

c) As a result of Defendant Everlane Inc.'s breach, Plaintiff Marol State, L.L.C. is entitled to recover damages incurred or accruing for the full ten (10) year term of the Lease; and

d) For any other relief in favor of Marol State and against Everlane that this Court deems appropriate under the circumstances.

Respectfully submitted,

MAROL STATE, L.L.C.,

By: /s/ Thomas P. Yardley, Jr.
      One of its attorneys

Thomas P. Yardley, Jr. (ARDC No. 6208239
Christine R. Walsh (ARDC No. 6319177)
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle Street
Suite 3300
Chicago, Illinois 60601
(312) 456-0184
tyardley@rsplaw.com
cwalsh@rsplaw.com