IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAROL STATE, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 21 C 4286 |
| EVERLANE, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Marol State, LLC owns a commercial building at 4 E. Cedar St. in Chicago. Defendant Everlane, Inc. makes and sells clothing. In October 2019, they entered into an agreement under which Everlane agreed to lease space at Marol State's building for a retail store. The lease was for a ten-year term to begin on the day Everlane opened its store for business or September 1, 2020, whichever was earlier. Everlane never actually opened its store, however, largely due to the effects of the coronavirus pandemic. This lawsuit represents the aftermath.

On October 12, 2020, Marol State sent Everlane notice that its September and October rent payments were overdue. Everlane did not make the payments. On November 25, 2020, it advised Marol State in writing that it was surrendering possession of the premises.

On May 10, 2021, Marol State notified Everlane that it was terminating the lease effective immediately. Everlane received this notice on May 11. On May 12, 2021, Marol State sold the property to another entity.

Marol State filed this lawsuit in August 2021.  The case is in federal court based on diversity of citizenship.  Marol State asserts two claims.  In count 1 of its complaint, Marol State asserts a claim for breach of contract.  It seeks two categories of damages.  First, Marol State seeks pre-termination damages, consisting of rent and related charges for the period from September 1, 2020 through May 10, 2021.  This is estimated to be a little over $1.4 million.  Second, Marol State seeks post-termination damages consisting of "the worth at the time of [the] termination of the excess, in any, of the amount of Rent reserved in the Lease for the remainder of the Lease Term over the then reasonable rental value of the Premises for the remainder of the Lease Term . . . ."  Compl. ¶ 47.B.(ii); Lease § 12.2(A).  This, Marol State says, amounts to a bit over $3 million.

Count 2 of Marol State's complaint is a declaratory judgment claim.  It contends that Everlane has asserted that by reason of a particular term of the lease giving it an early termination option, the actual duration of the lease term is fifty-five months, not ten years.  Marol State contends that Everlane did not properly invoke the early termination option and seeks a declaratory judgment accordingly.  Marol State further seeks a declaratory judgment that it is entitled to damages for the entire ten-year term of the lease.

Both sides have moved for partial summary judgment.  Everlane seeks a ruling that Marol State is not entitled to the post-termination damages referenced above and that there is no actual controversy regarding the early termination option, which, Everlane says, it does not claim to have invoked.  Marol State seeks a ruling on count 1 that it is entitled to pre-termination damages as well as an award of those damages; on

count 2 it seeks a declaratory judgment in its favor on the early termination question and a declaratory judgment that it is entitled to damages for the entire ten-year lease term.

1. **Post-termination damages**

It is undisputed that Everlane failed to perform its obligations and thus breached the lease. It is also undisputed that Marol State mitigated its damages (at least to some extent) by selling the property on May 12, 2021, a little over eight months into the lease term. The principal question presented by the parties' motions is whether, having sold the property, Marol State may seek lost rent damages for the post-sale portion of the lease term under section 12.2(A) of the lease. The parties have not cited any Illinois cases on this point, nor has the Court found any on its own.

The common law rule, it appears, is that when a lessee breaches a lease before the expiration of its term, the lessor has three alternative remedies. It may treat the lease as terminated and resume possession; it may take possession for the benefit of the lessee and hold the lessee liable for the difference in rent between what is due and what the lessor is able to recover by reletting the premises; or it may do nothing and collect the full rent due for the term of the lease. *See, e.g., Hi Kai Invm't, Ltd. v. Aloha Futons Beds & Waterbeds, Inc.*, 84 Haw. 75, 80, 929 P.2d 88, 93 (1996); *Quintero-Chadid Corp. v. Gersten*, 582 So. 2d 685, 688 (Fla. App. 1991); *Rokalor Inc. v. Conn. Eating Enters., Inc.*, 18 Conn. App. 384, 388, 558 A.2d 265, 268 (1989); *Olsen v. Country Club Sports, Inc.*, 110 Idaho 789, 794, 718 P.2d 1227, 1232 (1985); *Centurian Devel. Ltd. v. Kenford Co.*, 60 A.D.2d 96, 98, 400 N.Y.S.2d 263, 264 (1977); *Maida v. Main Bldg. of Houston*, 473 S.W.2d 648, 651 (Tex. App. 1971). Here Marol State terminated the lease and resumed possession.

But Marol State is not limited to common law remedies, because the parties' contract—the lease—provided for an additional remedy in the event of a breach by Everlane. The lease provision in question makes it clear that this remedy exists alongside any other remedies Marol State might have. The provision states:

> Should Landlord at any time terminate this Lease for any breach, *in addition to any other remedies it may have*, it may recover from Tenant all damages it may incur by reason of such breach, including . . . the cost of recovering the Premises, reasonable attorneys' fees, and including the worth at the time of such termination of the excess, if any, of the amount of Rent reserved in this Lease for remainder of the Lease Term over the then reasonable rental value of the Premises for the remainder of the Lease Term, all of which amounts shall be immediately due and payable from Tenant to Landlord.

Lease § 12.2(A) (emphasis added). Under the contract's plain language, Marol State is entitled to seek recovery under this term in addition to any other damages it might be able to prove.

Everlane contends that under the law, "a landlord that chooses to mitigate its damages by selling the previously leased property cannot recover damages based on lost rents for the period after the property was sold." Def.'s Summ. J. Mem. (dkt. no. 28) at 2. In support, Everlane cites a series of cases from other states that so hold. None of these cases, however, involved a lease that contained a provision like the one quoted above. Rather, they all followed the common law rule referenced earlier.

The rationale of these cases appears to be that when a landlord sells its property after a tenant defaults, the landlord is fully compensated for any future losses, because the sale price takes into account the expected future income from rental. *See, e.g., Krasne v. Tedeschi & Grasso*, 436 Mass. 103, 109, 762 N.E.2d 841, 847 (2002). And it is true that typically a contracting party is not entitled to a windfall or double recovery for

4

the same injury.  *See, e.g., Otto Baum Co. v. Sud Family Ltd. P'ship*, 2020 IL App (3d) 190054, ¶ 30, 159 N.E.3d 444, 453.

But although it is likely true that, in economic terms, the sale price for Marol State's property took into account its likely future rental value, that's not exactly what the lease provision quoted earlier is intended to cover.  This provision doesn't entitle Marol State to the entire stream of future rental income under the lease; rather, it provides for payment of the differential between the lease's future rental income stream and the property's reasonable rental value.  In other words, the provision accounts for, and is aimed at compensating Marol State for, a situation in which the property's rental value has dropped between the start of the lease term and the time of the breach (or, perhaps, the date when the property is relet or sold after a breach).  Selling the property wouldn't have compensated Marol State for *that*:  when rental property is sold, the price takes into account its anticipated future rental value as of the time of sale, not some anticipated future value it may have had months or years earlier.

An example will illustrate this.  Let's hypothesize a three-year lease with monthly rental payments of $10,000 during the first year; $12,000 during the second; and $14,000 during the third.  The tenant never takes possession of the property and surrenders it to the landlord; the landlord terminates the lease and looks for a new tenant; and after a year it finds one but, due to an intervening economic downturn, is able to rent the property to the new tenant for only half of what the original tenant had agreed to pay:  $6,000 per month for the second year of the original lease term, and $7,000 per month for the third.  The landlord has been damaged in two ways:  the loss of rent for the first year (twelve times $10,000, or $120,000), and the diminished rent for

5

the second and third years (twelve times $6,000, or $72,000, plus twelve times $7,000, or $84,000, for a total of $156,000). If the hypothetical landlord's lease had a provision like section 12.2(A) of the Marol State-Everlane lease, the landlord would be able to recover that $156,000 (or, perhaps, the present value of that amount), at least so long as the landlord could show that the $6,000-$7,000 rent payments that it got from the new tenant represented the reasonable rental value of the property for the second and third years of the original lease.

Now let's change the facts of the hypothetical in just one way. Instead of renting the property out to a new tenant after the first year of the defaulting tenant's term, the landlord sells the property at the end of the first year. Everything else remains the same: the original lease has a provision like section 12.2(A), and the landlord is able to show that due to the intervening economic downturn, the reasonable rental value of the property as of the time of the sale was just $6,000 per month for the second year of the original lease term and $7,000 for the original third year—as opposed to the original $12,000—$14,000. One would assume, all else being equal, that this diminished rental value was accounted for in the sale price for the property. But let's not assume this; let's say the landlord has an expert or other witness who credibly testifies that is the case. The landlord in the second hypothetical has been damaged in the same way, and in the same amount, as the landlord in the first case. And under section 12.2(A), the landlord would be able to recover the same amount.

If section 12.2(A) allowed Marol State to recover the rental payments for the full term, then enforcing it after Marol State sold the property *would* give it a windfall or double recovery. But that's not what the clause says: it limits recovery of future rent to

6

the excess of the rent under the lease over the reasonable rental value of the property. As indicated, the clause essentially protects the landlord against, perhaps among other things, a reduction of the rental value of the property following default by a tenant.

It's conceivable that, in this case, the rental value of the property did not drop between the execution of the Everlane lease and the subsequent sale of the property. It's also conceivable that an economic analysis would show that Marol State was compensated in full from the sale and would, in fact, be getting a windfall if it were awarded damages under section 12.2(A). But there is no way to know that at this point. Put in summary judgment terms, on the present record there is a genuine factual dispute over got for the property was sufficient to compensate it for any diminished rental value.[1]

### 2. Pre-termination damages

As indicated, it is undisputed that Everlane breached the lease. Everlane does not take issue with any of the following propositions: the amount of past due "base rent" is $654,296.99; the amount of past due "additional rent" is $79,408.03; the interest due on the outstanding amounts is $54,087.52; and the amount due for late payment charges is $36,685.25. *See* Def.'s Resp. to Pl.'s LR 56.1 Stat. of Facts ¶¶ 32-37. The Court finds under Federal Rule of Civil Procedure 56(g) that these points are established. Entry of summary judgment awarding damages, however, is inappropriate, because the adequacy of Marol State's mitigation efforts is genuinely disputed on the present record.

---

[1] The Court likewise does not intend to preclude Everlane from asserting any other legitimate defenses that it might have to Marol State's claims.

7

3.   **Declaratory judgment claim**

Marol State seeks summary judgment on the part of count 2 in which it seeks a declaratory judgment that Everlane did not and could not exercise the termination option in section 3.6 of the lease. In response, Everlane disavows any contention that it did or controversy that would support a claim for declaratory relief. As Marol State contends, it's not that simple. In its answer, Everlane denied the allegation that it had no right to exercise the termination option. Thus there was an actual controversy at the time of the lawsuit, even if Everlane later chose to change course.

Based on Everlane's express disavowal of any contention that it did or could exercise the termination option, Marol State is entitled to a declaratory judgment that Everlane is not entitled to do so.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for partial summary judgment [27] and grants plaintiff's motion for partial summary judgment [30] in part. Pursuant to Rule 56(g), the Court finds, with respect to count 1 of the complaint, that the amounts set out by plaintiff in its summary judgment motion for pre-termination damages are established. In addition, on count 2 plaintiff is entitled to a declaratory judgment that defendant did not exercise and was not entitled to exercise the termination option in section 3.6 of the parties' lease. The Court otherwise denies defendant's motion. At today's telephonic status hearing, the Court will set a schedule for further proceedings.

Date:  May 31, 2022

_____
MATTHEW F. KENNELLY
United States District Judge